UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:19-CR-99-HAB |
| ) | |
| STEPHEN L. JOHNSON ) | |

**OPINION AND ORDER**

After Defendant, Stephen Johnson ("Johnson"), fled from police on his motorcycle at speeds approaching 100 mph, failed to negotiate a curve, and wrecked on the side of the road, police located a one-pound brick of methamphetamine wrapped in a bandana in his coat pocket. The Government eventually charged Johnson by way of a single count Indictment with possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1).[1] Before the Court is Johnson's Motion to Suppress (ECF No. 22) filed on September 9, 2020, in which he seeks to suppress the methamphetamine found at the scene of the accident.

On December 23, 2020, the Court held an evidentiary hearing on the motion. After the filing of the transcript from that hearing, the Defendant filed an opening brief (ECF No. 40) on April 29, 2021, to which the Government responded on June 4, 2021, (ECF No. 44) and the Defendant replied on June 15, 2021 (ECF No. 47). Because the Court determines that the search of the Defendant did not violate the Fourth Amendment, the Court will DENY the Defendant's Motion to Suppress.

**FACTUAL BACKGROUND**

---

[1] The Indictment also contains a forfeiture allegation.

On October 5, 2019, shortly after midnight, Deputy Tyler Smoker (Officer Smoker) of the LaGrange Police Department, and Deputies Todd Johnson (Deputy Johnson) and Jeffrey Thieme (Deputy Thieme) of the LaGrange County Sheriff's Department, were taking a break at the LaGrange Marathon gas station at the intersection of US 20 and State Road 9 in LaGrange, Indiana. ((Evid. Hr'g Tr., ECF No. 35, at 10). While there, they heard a "loud" motorcycle approaching their location. (*Id.* at 10, 12: "We couldn't see it coming. We could just hear it."). Officer Smoker described the sound as a "real loud exhaust" and testified that he heard "the downshifting of the motorcycle coming into town, slowing down," for a stoplight. (*Id.*). The motorcycle properly complied with the traffic light and proceeded south on State Road 9. (*Id.* at 10-11).

Officer Smoker testified that he is familiar with state and local noise ordinances and he believed the motorcycle violated those ordinances. Thus, after the motorcycle went by the Marathon station, Officer Smoker intended to stop the motorcycle for the infraction of having a loud exhaust. (Evid.Hr'g Tr. at 12). Because he was outside his patrol vehicle when he first heard the motorcycle, it took Officer Smoker a moment to get into his squad car and maneuver behind the motorcycle. (*Id.*). Once Officer Smoker caught up with the motorcycle, the driver, later determined to be Johnson, looked back at Officer Smoker and proceeded left of center. At that point, Officer Smoker initiated his lights and sirens. The motorcycle then accelerated and Officer Smoker gave chase. The speed limit on the portion of SR 9 where the chase ensued was 55 mph. However, Officer Smoker testified that the motorcycle's speed "eventually got to hundred mile an hour, little over hundred mile an hour." (*Id.* at 13). According to Officer Smoker, "[m]y vehicle was over a hundred mile an hour, and I was not really keeping up with him, so I assume he was going faster than that." (*Id.* at 14). Further, Officer Smoker noted that "[h]is vehicle was all over

the roadway. It seemed like he couldn't keep it in the lane." (*Id.* at 13). Officer Smoker advised dispatch that he was in a vehicle pursuit.

Soon after, the motorcycle approached a curve in the roadway. Officer Smoker knew the curve was coming and slowed his patrol car to negotiate the curve. The motorcycle, however, was proceeding too fast, and Johnson belatedly hit the brakes resulting in the motorcycle traveling through the curve off into an embankment. (Evid. Hr'g Tr. at 14). Johnson flipped over the handlebars and landed in the grass. (*Id.*).

Officer Smoker stopped his pursuit and called for emergency medical services (EMS) before approaching Johnson lying in the grass. Johnson appeared unconscious, was unresponsive and breathing oddly at first, but soon began breathing normally. Officer Smoker checked Johnson for obvious injuries and held Johnson's head in a stable C-spine position to prevent spinal injury while awaiting EMS.

By now, Deputies Johnson and Thieme had arrived on scene. There is some dispute in the record on whether Johnson was wearing a helmet at the time of the accident and whether at some point he regained consciousness. Officer Smoker testified that Johnson was wearing a helmet and he removed it before holding the C-spine position. (Evid. Hr'g Tr. at 15). The other officers do not recall seeing a helmet and there was no physical evidence presented at the hearing showing a helmet on the scene. As for whether Johnson regained consciousness, Officer Smoker testified that Johnson roused and tried to stand up. (*Id.* at 44). Upon further questioning, Officer Smoker revealed that "[h]e tried sitting up a couple of times and we just told him to lay still." (*Id.*). However, Deputy Johnson testified that when he first arrived on the scene Johnson's eyes were closed. (*Id.* at 88). He explained that at some point he saw Johnson open his eyes briefly and close

3

them. (*Id.*). Deputy Johnson did not see Johnson attempt to stand up but testified that Officer Smoker told him on scene that Johnson had done so. (*Id.*).

Whether or not he was conscious, all the officers testified that Johnson was unresponsive and could not provide his name to the officers or EMS. For this reason, Officer Smoker searched Johnson's coat pockets[2] to retrieve identification. Officer Smoker testified that Johnson would have been arrested at the scene had he not required medical assistance. For this reason, he clarified that he also was searching Johnson incident to arrest and for weapons because he committed the felony offense of fleeing from law enforcement in a motor vehicle and, based on his training and experience, individuals that flee from police may be armed. (Evid. Hr'g Tr. at 17, 47). Upon searching his pockets, Officer Smoker located Johnson's' wallet and birth certificate in the base layer coat. In addition, Officer Smoker found a bandana-wrapped one-pound brick of methamphetamine in another pocket. (*Id.* at 18, 25-27).

When EMS arrived, they evaluated Johnson and requested the officers' assistance in cutting off Johnson's outer layers of clothing so they could evaluate his injuries and place an IV line. (Evid. Hr'g. Tr. at 54, 79). EMS then determined that Johnson's injuries required an airlift to the hospital. Officer Smoker contacted dispatch to ensure that law enforcement personnel would remain with Johnson at the hospital; however, no officer on scene traveled with Johnson in the helicopter due to weight limit restrictions. (*Id.* at 29). The motorcycle was towed from the scene and the clothes Johnson was wearing that were removed from the scene were either taken by police or left with the motorcycle for towing. (*Id.*at 20, 99, 107). Johnson was not handcuffed at the scene because of his injuries nor was he told he was under arrest. (*Id.* at 113-114). Officer Smoker stated that by the time he was placed in the helicopter, he believed Johnson was "talking to the medics,

---

[2] Johnson had three layers of coats on at the time of the incident.

but I didn't talk to him." (*Id.* at 114). Officer Smoker had no knowledge about whether Fort Wayne officers arrived at the hospital in response to his discussion with dispatch.

Once Johnson arrived at the hospital, medical personnel determined he needed surgery and would remain in the hospital overnight. If officers were onsite at the hospital when Johnson arrived, no evidence was presented on that issue. Johnson's girlfriend, Jeannette Taylor (Taylor), also testified at the hearing and stated that when she eventually arrived at the hospital (some hours later), she did not encounter any law enforcement personnel monitoring Johnson. What is clear is that any officers that may have been maintaining custody of Johnson at the hospital ceased doing so once he underwent surgery. (*Id.* at 30, 115).[3] A review of LaGrange Superior Court case number 44D01-1911-F2-000011 reveals that Johnson was formally charged by information on November 1, 2019, and a warrant for his arrest was issued on November 7, 2019.

Based on these facts, Johnson contends that he was searched in violation of the Fourth Amendment and seeks suppression of the drugs seized from his person at the time of the accident.

## **DISCUSSION**

Before turning to the nub of Defendant's motion, it is helpful to note what is not in dispute. Although Johnson initially asserted that the officers did not have reasonable suspicion or probable cause to stop him for a loud exhaust infraction, he now concedes that his conduct, once Officer Smoker attempted to pull him over, created the requisite justification for a stop. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) ("[h]eadlong flight—wherever it occurs—is the consummate act of evasion ...." and gives rise to reasonable suspicion). Further, a police officer possesses

---

[3]Taylor also provided testimony that she had seen the motorcycle that Johnson had crashed a few times previously and did not believe it had a loud exhaust. However, Johnson has conceded that even if the officers did not have probable cause to stop him for a loud exhaust, ample probable cause existed once he went left of center and led them on a high-speed chase. (*See* discussion in main text, *infra*). Thus, her testimony, even if credited on this point, adds nothing to the legal analysis.

5

probable cause if at the time of a stop the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). There is little question that Officer Smoker had probable cause to believe Johnson committed multiple traffic offenses and the felony offense of resisting by flight, *see* Ind. Code § 35-44-1-3-1(a)(3); after all, he witnessed and observed all of these violations once he left the Marathon gas station. As a result, Johnson wisely concedes the validity of the stop. That concession notwithstanding, however, Johnson asserts that the warrantless search of his coat pockets was in violation of the Fourth Amendment.

    a.  **Search Incident to Arrest**

The Fourth Amendment protects individuals against unreasonable searches and seizures. The Fourth Amendment also prohibits, with limited exceptions, warrantless searches as they are *per se* unreasonable. *Gibbs v. Lomas*, 755 F.3d 529, 542 (7th Cir. 2014) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Gant*, 556 U.S. at 338 (citing *Weeks v. United States*, 232 U.S. 383, 392 (1914)).

Here, while Johnson concedes there was probable cause for a stop, his brief suggests he does not concede there was probable cause for an arrest or, at least, that despite the existence of probable cause, he was not formally placed "under arrest" either before or just after the search. (ECF No. 40 at 6-8). Thus, as the theory goes, since he was not under "arrest," a search of his person incident to an arrest is invalid. The Government responds that a host of exceptions to the warrant requirement justified the search but focuses mainly on the search incident to arrest exception.

When a police officer arrests an individual, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape ... [and] to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 762-63 (1969). In *United States v. Robinson.* 414 U.S. 218, 235 (1973). the Supreme Court clarified that while the authority to search incident to arrest stems from the "need to disarm and to discover evidence," "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." The mere "fact of the lawful arrest" justifies "a full search of the person." *Robinson,* 414 U.S. 218 at 235.

Here, the Government asserts and the Court agrees that probable cause to make an arrest existed. "An officer may make a warrantless arrest consistent with the Fourth Amendment if there is probable cause to believe that a crime has been committed." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (internal quotation marks and brackets omitted). There was certainly probable cause for an arrest when Johnson committed a felony in the presence of the police by fleeing at high speeds from Officer Smoker's attempt to stop him for an infraction.

But this is where the Court's agreement with the Government parts ways. Because probable cause to arrest Johnson existed at the time of the search, the Government asserts that the search of Johnson's pockets to make sure he did not have any contraband or weapons on him that could harm first responders was justified. To this end, the Government cites cases holding that where an officer has probable cause to arrest an individual, the officer may search the individual incident to arrest even where the officer does not arrest the individual before the search, so long as the results of the search are not used to justify the arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)

("'Where the formal arrest follow[s] quickly on the heels of the challenged search' it is not 'particularly important that the search preceded the arrest rather than vice versa.'"); *United States v. Paige,* 870 F.3d 693 (7th Cir. 2017). Finally, the Government observes that Johnson would have been arrested on site had he not been experiencing a medical emergency necessitating his transport by airlift to a hospital. Thus, the Government posits Johnson was not free to leave and a reasonable person would not have felt free to walk away from the scene.

The problem with this argument, as Defendant shrewdly points out, is that despite the Government's protestations to the contrary, there is little to show that an actual arrest occurred. "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991). "[T]he only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Here, by all accounts, the Defendant was lying unresponsive on the ground at the time of the search. He had neither the ability or capacity to understand his situation or that he was "under arrest" nor was it ever communicated to him by the officers. Further, while Officer Smoker conveyed that he would have arrested Johnson for felony resisting by flight, a police officer's subjective intention is irrelevant when determining whether an arrest occurred. *United States v. Mendenhall,* 446 U.S. 544, 554 n.6 (1980).

The Court finds support for this conclusion in *United States v. Hawkins*, No. 00-CR-53-BS, 2001 WL 103542. at *1 (D. Me. Feb. 6. 2001), *aff'd,* 279 F.3d 84 (1st Cir. 2002). There, the court, when faced with strikingly similar facts to this case, concluded that the search incident to arrest exception did not apply to justify that search. In that case, the defendant was unconscious in a hospital at the time of the search, having been in a serious motorcycle accident while being

8

pursued by police for driving erratically. In analyzing the law, the court noted that the law does not account for "those allegedly arrested while unconscious." It later noted that "after all, a reasonable unconscious person would have no capacity to believe or disbelieve whether [he] was free to depart." *Id.* at *6. As for the particular facts of the case, the court held that despite periods when the defendant was conscious, there was no indication of an arrest until days later, *id.* at *6-7, and thus "a reasonable conscious person… would have perceived no indicia of arrest." (*Id.*). Further, unlike in this case where no evidence of any officers at the hospital was presented, the court in *Hawkins* noted that an officer was placed near the defendant while he was in the hospital but he never "perform[ed] any action indicative of arresting him." (*Id.* at *6). Thus, the district court found that there was "no evidence that anyone arrested Defendant before, or soon after, the search." Thus, the search was improper because the "incident to an arrest" rule applied only where "the *formal arrest* followed quickly on the heels of the challenged search." *Id.* at *7 (emphasis in original).

While in its brief the Government attempts to shoestring the facts in a way to tie them into evidence that officers made a show of authority sufficient that a reasonable person would believe there was an arrest or seizure, the Court is simply not persuaded that such a seizure occurred here. "A person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Mendenhall,* 446 U.S. at 553. The Government asserts that the officers made a show of authority by surrounding Johnson, physically removing his clothes and retaining them, holding his identification and birth certificate, and directing him to remain still. Indeed, the Government is correct that these can be, but are not always, indicia of a show of authority. *See United States v. Crandell,* 554 F.3d 79, 85 (3rd Cir. 2009) (finding a show of authority that may constitute a seizure to a reasonable person includes the "threatening presence of several officers,

9

the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."); *Mendenhall,* 446 U.S. at 554–55. But *Mendenhall* also requires submission to a 'show of authority' for a seizure to have been effected. (*Id.).* The Government has not pointed to any authorities suggesting that an unresponsive individual can submit to a show of authority and thus be "seized" under the Fourth Amendment. Rather, there are authorities questioning such an argument.

For instance, in *Leaf v. Shelnutt,* 400 F.3d 1070, 1090 (7th Cir. 2005), the Court of Appeals found there to be no seizure when a plaintiff's failure to flee in response to a show of authority resulted from his being asleep or unconscious. In *Leaf,* two police officers entered the plaintiff's house and searched while the plaintiff was lying on a bed with his eyes closed. *Id.* at 1075. In examining whether the plaintiff was seized, the Court emphasized that the "seizure must be accomplished *'through means intentionally applied'* [and] it is not the case that a seizure occurs every time there is a 'governmentally *desired* termination of an individual's freedom of movement.'" *Id.* at 1090 *citing Brower,* 489 U.S. at 597 (emphases in original). The Court further observed that "[w]here police seek to stop someone, but the subject is 'in fact stopped ... by a different means' no seizure occurs." *Id., citing Brower v. Cnty. of Inyo,* 489 U.S. 593, 597 (1989). The Court determined that if the plaintiff's "failure to flee can be attributed to the fact that he was asleep or otherwise unconscious," "it cannot be said that the officers terminated his freedom of movement through their show of authority." *Id.*

Likewise, the Sixth Circuit in *Peete v. Metro. Gov't of Nashville & Davidson Cnty.,* 486 F.3d 217, 217 (6th Cir. 2007), emphasized that a "seizure" connotes "an intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable

person consciously to submit." *Id.* at 220. The Court held that because the plaintiff was in an unconscious epileptic state when he encountered emergency medical personnel he "could not perceive any restraint on his liberty or otherwise feel compelled to submit to a governmental show of force" and was thus not seized under the Fourth Amendment. *Id.* at 217. In so concluding, the Court reiterated that "the question whether a seizure has occurred within the meaning of the Fourth Amendment is an objective one." *Id.* at 220.

What that means here is that the Government has not convinced the Court that there was sufficient indicia of authority for an arrest or submission to that authority such that a reasonable person in Johnson's state would have known he was under arrest. *See United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018) ("[T]he government [bears] the burden of proving by a preponderance of the evidence ... that an exception to the warrant requirement applied."). The Government concedes that Johnson was unresponsive, at least at first, and Officer Smoker testified that, when Johnson was conscious and talking with medical personnel before being placed in the airlift, he had no communication with Johnson. Johnson remained unrestrained and was never told he was under arrest. He was unaccompanied by officers in the helicopter and when he arrived at the hospital, there is no evidence presented to the Court of officers there to receive him. Given these circumstances, this Court cannot accept with any degree of certainty that a reasonable person would have believed themselves to be under arrest. Certainly, the Government's position would be more viable had there been evidence that when Johnson arrived at the hospital, officers awaited him or, he was physically restrained or told at the hospital when he was stabilized that he would face arrest. No such evidence was presented. Similarly, if Johnson had acted in a manner that suggested a belief he was under arrest, the outcome would differ. But the Court has no such record

11

before it. The Court therefore concludes that the search of Johnson cannot be supported by the search incident to arrest exception as he was not seized under the Fourth Amendment.[4]

   b.  **Exigent Circumstances/Medical Emergency**

Despite the skepticism of the Court as to the applicability of the search incident to arrest exception, the Court has little concern finding that the Government has met its burden of justifying the search because of the exigency of the situation and the need to assist in rendering aid to Johnson. Exigent circumstances include a Fourth Amendment warrant exception in which law enforcement faces a "need to protect or preserve life or avoid serious injury." *Mincey v. Arizona,* 437 U.S. 385, 392–93 (1978). "The police play a critical role not just in 'preventing violence and restoring order,' but in rendering emergency aid pursuant to the police force's role as community caretakers." *Brigham City v. Stuart,* 547 U.S. 398, 406 (2006). For this reason, "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000). **"**Whether the exigent circumstances exception justifies warrantless action is judged by an objective standard: we ask whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir. 2014) (citing *Michigan v. Tyler,* 436 U.S. 499, 509 (1978)). While this doctrine has been traditionally applied to warrantless home entries when a person is in danger, by analogy, it has been extended to limited warrantless searches of an individual needing medical

---

[4] In ruling as it does, the commonsense principle that if you flee from police in a high-speed pursuit you are subjecting yourself to the possibility of arrest is not lost on the Court. However, that is a subjective analysis. The determination here is an objective one and officers' conduct here failed to add further to that analysis.

12

attention for identification or medical alert information. *See United States v. Haley,* 581 F.2d 723, 726 (8th Cir. 1978).

*Haley* is instructive here. In that case, the officer was presented with an emergency when he observed Haley lying on the street, and he reasonably believed that Haley needed immediate assistance. The officer managed to momentarily rouse Haley who provided him with his name and revealed he was not hurt or injured. Haley's lapse from consciousness did not appear to be attributable to alcohol. The court found that it was, thus, reasonable for the officer to seek identification or medical alert cards which might help. When he found no identification on Haley's person, the court found equally reasonable the officer's decision to seek to obtain identification from what the officer believed to be Haley's briefcase. Because the search was limited to obtaining identification and medical information and was not a wide-ranging investigatory search, the court found the exception applied. *Haley,* 581 F.2d at 726.

In this instance, Officer Smoker was certainly reasonable to conclude a medical emergency existed after witnessing Johnson disembark from a roadway on a motorcycle at a high rate of speed. The Supreme Court has made clear "unconsciousness does not just create pressing needs; it is *itself* a medical emergency," *Mitchell v. Wisconsin,* 139 S. Ct. 2525, 2537 (2019), which justifies intervention under the emergency aid exception to the Fourth Amendment. Thus, the Court finds that Officer Smoker acted in an objectively reasonable manner by checking Johnson's coat pockets for identification and medical alert information, the discovery of which could have made all the difference to Johnson's life. The discovery of the contraband does not change this analysis. The search was limited in scope and time and therefore, reasonable under the circumstances of medical emergency. The Motion to Suppress is, therefore, DENIED.

    c.  **Inevitable Discovery and Inventory Search**

Because the Court finds the search valid under the exigent circumstances doctrine, it need not opine at length on the Government's assertion that the methamphetamine would have been inevitably discovered as part of an inventory search after the motorcycle was towed. It suffices to say that the record is void of any evidence of the procedures used by LaGrange County for the impound of vehicles or the process of recording the inventory sufficient to support these assertions.

"The inevitable discovery doctrine provides that illegally obtained evidence will not be excluded if the government 'can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Haldorson*, 941 F.3d 284, 293 (7th Cir. 2019), quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984). This principle is often applied in the context of an inventory search of a vehicle impounded after an arrest. *See, e.g.*, *Haldorson*, 941 F.3d at 293 (once Haldorson was arrested, police officers would have towed his vehicle to the police station and conducted an inventory search, so that the drugs and explosives would have inevitably been discovered); *United States v. Cherry*, 920 F.3d 1126, 1140 (7th Cir. 2019) ("Once Cherry had been arrested, the agents would have removed his car from the parking lot and it would have been subject to an inventory search, as is the usual protocol").

That said, "[w]arrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005). The Court is hard-pressed to uphold a search under this theory when there has been no evidence of the standard police procedures that would have been employed to inventory the motorcycle and no evidence of what was, in fact, inventoried. The officers could not definitively testify where Johnson's clothes that had been removed from him

ended up nor was there any evidence presented of the inventory search that occurred. The sole evidence presented at the hearing was a photograph of the motorcycle on the tow truck. For these reasons, the Court cannot accept the Government's assertion that the inevitable discovery doctrine applies.

## CONCLUSION

Based on the above, the Defendant's Motion to Suppress (ECF No. 22) is DENIED.

SO ORDERED on July 6, 2021.

                                           s/ Holly A. Brady
                                           JUDGE HOLLY A. BRADY
                                           UNITED STATES DISTRICT COURT