UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE No. 1:19-CR-99 |
| ) | 1:22-CV-00443-HAB |
| STEPHEN J.L. JOHNSON ) | |
| ) | |

## OPINION AND ORDER

Stephen J. L. Johnson ("Johnson") is currently serving a 180-month sentence for possession with intent to distribute 50 grams or more of methamphetamine. He now moves this Court pursuant to 28 U.S.C. §2255 to vacate his conviction and sentence because his counsel was constitutionally deficient. (Motion, ECF No. 83; Amended Motion, ECF No. 95). The Government opposes Johnson's petition (ECF Nos. 92, 98). Although given the opportunity to reply, see ECF No. 97, Johnson did not do so. For the following reasons, Johnson's Motion pursuant to 28 U.S.C. §2255 will be DENIED.

## FACTUAL BACKGROUND

While on patrol on October 15, 2019, officers from the LaGrange Police Department ("LPD") observed and heard Johnson operating his motorcycle with what appeared to be an aftermarket exhaust and no muffler. Because this violated a town ordinance as well as state law, the officers began following the motorcycle. While behind the motorcycle officers noticed the motorcycle had no license plate. The officers then attempted to pull Johnson over, but Johnson was not having any part of it. He fled from police on his motorcycle at speeds approaching 100 mph, failed to negotiate a curve, and wrecked on the side of the road. Officers requested an ambulance and one officer, Officer Tyler Smoker ("Ofc. Smoker"), began administering life-

saving medical treatment. During this time, Ofc. Smoker noticed that Johnson was wearing three coats. Inside one of the coat pockets, Ofc. Smoker located a one-pound brick of methamphetamine wrapped in a bandana. Johnson was eventually airlifted to the hospital. He was charged with possession with intent to distribute more than 50 grams of methamphetamine. That charge carried with it a statutory mandatory minimum sentence of 120-months. If that were not daunting enough, this was not Johnson's first serious felony offense, which put him at risk of receiving a sentencing enhancement if the Government filed an information pursuant to 21 U.S.C. §851 ("851 Enhancement").

Given the sentencing potentials in play, Johnson moved to suppress the methamphetamine claiming that the officers illegally searched him at the scene of the accident. This Court found that the motion lacked merit, ECF No. 48, and set the matter for trial. On August 25, 2021, Johnson signed a plea agreement (Plea, ECF No. 53). Paragraph 8(b) of that agreement stated:

> I understand that the maximum possible penalties that may be imposed upon me for my conviction of the offenses charged in the single count of the Indictment are as follows: imprisonment of not less than 10 years and not more than life, a fine of not more than $10 million, or both such fine and imprisonment, a supervised release term of at least 5 years, and a $100 special assessment. However, because I have one prior final conviction for a serious drug felony or a serious violent felony, I face imprisonment of not less than 15 years and not more than life, a fine of not more than $20 million, or both such fine and imprisonment, a supervised release term of at least 10 years, and a $100 special assessment. The $100 special assessment is due and payable prior to my sentencing hearing.

(Plea, ¶8(b)). Johnson then acknowledged at least one prior final conviction for a serious violent felony, by agreeing, at paragraph (d) to the following:

> I understand that the United States will file an Information with the Court pursuant to 21 U.S.C. § 851 prior to the filing of this plea agreement alleging that I have been convicted of one serious violent felony. I agree that I have been convicted of a serious violent felony, to wit:
>
>> Robbery, a class B felony, in the St. Joseph County Superior Court, State of Indiana, cause number 71D04-9107-CF00620, for which I

2

> was sentenced on December 4, 1991, and for which I served a term of actual incarceration which exceeded twelve months.
>
> I further understand that in recognition of my guilty plea, the United States of America agrees to allege my commission of the single prior serious violent felony listed above and will not seek further sentencing enhancement under 21 U.S.C. § 851 for any other prior serious drug felonies or serious violent felonies of which I may have been previously convicted.

(Plea, ¶8(d)). In exchange for his plea of guilty, the Government also agreed that Johnson should receive a two-point reduction for acceptance of responsibility and that it would recommend an additional point if Johnson was eligible. (*Id.* ¶8(c)(i)).

True to its part of the agreement, the Government filed the 851 Enhancement. (ECF No. 52). The Magistrate Judge held a change of plea hearing at which the Magistrate found that Johnson was competent, understood the significance of the proceeding, the charges against him, his rights and penalties, and was voluntarily entering into the plea agreement with the Government. (Plea Hearing, ECF No. 56; Report and Recommendation, "R & R," ECF No. 57). The Magistrate Judge also concluded that a factual basis for Johnson's plea existed and recommended that the District Judge accept Johnson's plea of guilty. (R & R at 3-4). The Court accepted the R & R, ECF No. 60, and set the matter for sentencing.

Ahead of the sentencing, the parties received and had an opportunity to object to the Presentence Investigation Report ("PSR"). No objections to the PSR were received and the undersigned sentenced Johnson to the mandatory statutory minimum of 15 years imprisonment with 10 years of supervised release to follow.

Johnson now moves to vacate that sentence asserting that his counsel was ineffective. It is to these arguments that the Court now turns.

## DISCUSSION

a. **Legal Standards**

3

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion pursuant to § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence went beyond the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id.*

Johnson's options for relief under §2255 are further limited by the agreements he made in his plea agreement. There, Johnson waived his appellate rights as well as his right to contest his conviction and "all components of [his] sentence or the manner in which [the] conviction or [] sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel." (Plea, ¶8(f)). Thus, the sole avenues left open for Johnson to raise complaints under §2255 are his current contentions that he was denied effective representation of counsel.

The Sixth Amendment guarantees criminal defendants "the right ... to have the Assistance of Counsel for [their] defence." The right to counsel includes "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 687–688, and (2) that any such deficiency was "prejudicial to the defense," *id*., at 692. A court may address these prongs in either order and need not address both if the defendant makes an insufficient showing on one. *Id.* at 697.

To establish the performance prong of the *Strickland* test, Johnson must show that his attorney's performance failed to meet an objective standard of reasonableness under prevailing

professional norms. *Strickland*, 466 U.S. at 687–88. The court's "scrutiny of counsel's performance [is] highly deferential," *id.* at 689, and Johnson "must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citations omitted) (internal quotation marks omitted). In assessing counsel's performance, the court does "not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010).

As for prejudice, there is again a presumption that the defendant has not suffered prejudice. *Perrone v. United States,* 889 F.3d 898, 908 (7th Cir. 2018). To prevail on this prong, generally a defendant must show that "but for counsel's errors, there is a reasonable probability that the result would have been different." *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). In the context of a guilty plea, a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted). To make this showing, the defendant "must do more than simply allege 'that he would have insisted on going to trial.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citation omitted). He must "come forward with objective evidence that he would not have pled guilty," such as evidence regarding "the nature of the misinformation provided by the attorney to [him] and the history of plea negotiations." *Id.* In the context of sentencing, a defendant "must show that but for his counsel's unprofessional error, there is a reasonable probability that the results [of the sentencing hearing] would have been different." *Berkey v. United States*, 318 F.3d 768, 773–74 (7th Cir. 2003).

    b. **Performance Prong**

        1. *Use of Stale Conviction to Enhance Sentence*

5

Johnson's first argument involves one of his convictions for robbery[1] and the effect of that conviction on his sentence. Johnson believes that the Government used a stale conviction to undergird the 851 Enhancement. He points to the sentencing guidelines, see U.S.S.G. §4B1.2(e) (sentences of imprisonment within fifteen years of the date of the offense or incarceration during that fifteen-year period not included in calculating the defendant's criminal history category), and argues that because the conviction did not warrant criminal history points, it could not be used to enhance his sentence under §851.

Setting aside the fact that Johnson *agreed* to the filing of the 851 Enhancement and acknowledged in his plea agreement that the enhancement was based on the conviction in Case No. 71D04-9107-CF-620, Johnson has a larger issue. That is, his belief that a statute of limitations prohibits a stale conviction from enhancing a sentence under §851 is plainly wrong. Put simply, convictions that are stale for guideline purposes can still qualify as a predicate conviction for the 851 Enhancement. Indeed, while this conviction may have been too old to be scored under the guidelines, Johnson's mandatory minimum sentence was driven by statute, not the guidelines. There is nothing in § 851 which operates as a temporal restriction on the predicate prior felony conviction. *See United States v. Smith,* , 2019 WL 3536937, at *10 (D.S.C. Jan. 24, 2019); *Bell v. United States,* 2018 WL 11241066, at *3 (D.N.D. May 1, 2018) (holding that the court was unaware of any statute of limitations barring old convictions from being used to enhance a sentence under 21 U.S.C. §851); *United States v. Johnson*, 2008 WL 576331, N.D. Fla. (Feb. 28, 2008) (same) (unpublished). Thus, counsel could not have been ineffective for failing to raise an issue that is clearly authorized by statute.

---

[1] The PSR reveals that Johnson has three prior robbery convictions, all from a crime spree in 1991. Those three cases all originated in Joseph County Superior Court and bear the Case Nos.: 71D04-9107-CF-661; 71D04-9107-CF-661; and 71D04-9107-CF-663. The Government chose to use his conviction in Joseph County Superior Court, Case No. 71D04-9107-CF-620 as the predicate felony for the 851 Enhancement.

  2.  *Negotiation of the 851 Enhancement*

Next Johnson argues that his robbery conviction does not qualify as a "crime of violence" under U.S.S.G. §4B1.2 and so it could not also enhance his sentence under 21 U.S.C. §851. But again, Johnson conflates the sentencing guidelines with the statutory basis for the enhancement.

A defendant is a career offender under U.S.S.G. § 4B1.1 if the defendant's instant offense of conviction is for "crime of violence" or a "controlled substance offense" and the defendant has at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense." The terms "crime of violence" and "controlled substance offense" are terms of art under §4B1.2 of the Guidelines. Ultimately, however, the designation of a defendant as a career offender in the PSI is not something within the Government's control.

In contrast, section 841 of United States Code Title 21 sets out the penalties for violating federal drug laws. Relevant here, the statute provides for increased penalties if the defendant has one or more prior convictions for a "serious violent felony" or "serious drug felony." 21 U.S.C. § 841(b)(1)(A). Unlike the career offender designation, the Government has discretion to file an information under 21 U.S.C. §851.

Defendant was not assessed a career offender enhancement in the PSR. But while he seems to acknowledge this, he argues that because his prior conviction wasn't a "crime of violence" warranting a career offender increase, it can't logically be a "serious violent felony." This is simply another incorrect premise. But whether Johnson is correct or not is of no moment presently, as the Court views Johnson's argument, his complaint is that counsel was ineffective by advising him that he should agree to the enhancement and its applicability in the plea agreement when, he now believes, the conviction did not qualify for it. So, the Court switches gears to assess this claim.

7

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See *Missouri v. Frye*, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. *Lafler v. Cooper,* 566 U.S. 156, 162 (2012). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

For its part, the Government argues that there was no ineffective assistance of counsel as to ¶8 of the plea agreement. To get there, the Government undertakes a walk-thru of the term "serious violent felony" to show that Defendant's conviction in Case No. 71D04-9107-CF-620 qualifies as such an offense. As part of its analysis, the Government points to paragraph 44 of the PSR, to which the Defendant did not object at sentencing, that described the details of Johnson's prior conviction:

> The defendant was represented by counsel. According to the Affidavit for Probable Cause, in part, on July 1, 1991, officers were dispatched to the Community Wide Federal Credit Union in reference to an armed robbery which had just occurred. Officers spoke with a teller, who stated that a man entered the bank, pointed a gun at her, and demanded money by stating, "Give me all the twenties and tens," or words to that effect. The teller stated that she took her money tray from the drawer and exited the credit union. The cash amount taken during the robbery was later determined to be $3,590.00. …the defendant was located and questioned. He admitted to robbing the credit union.

(PSR ¶44). Given this recitation and the statutory definitions the Government set out in its brief as to what crimes qualify as a "serious violent felony", the Government contends that counsel did not provide ineffective assistance by having Johnson agree to the § 851 Enhancement. The Court wholeheartedly agrees.

Johnson was not just facing the possibility of an enhanced sentence of 15 years for his prior convictions; the Government's notice of penalties placed Johnson on notice that for two or more

8

qualifying convictions he was facing an enhanced sentence that could reach a mandatory minimum 25 years. (ECF No. 7). And the PSR confirms that the Defendant had multiple prior convictions, see PSR ¶¶ 40-47, that not only could have, but likely would have, justified a mandatory minimum 25-year sentence. It makes sense then, that Johnson's counsel negotiated a plea agreement that would cap his mandatory exposure to just 15 years by having Johnson agree to one "serious violent felony" in exchange for the Government's agreement to overlook the others.

Although Johnson believes differently, the Court finds no error in counsel's likely assessment that his conviction in Case No. 71D04-9107-CF-620, which involved use of a firearm, qualified as a serious violent felony. Reasonable counsel sees the writing on the wall; and, even in the case of a close call, counsel would be reasonable to conclude that by Johnson admitting to one serious violent felony, the Government's interest in obtaining a just and substantial sentence would be satisfied. In turn, that satisfaction translated into ten less years for Johnson.

Plea agreements are a give and take; they typically contain promises and concessions by both the Government and the defendant. The Court is hard-pressed to find fault with counsel's performance when meaningful concessions are reached that otherwise would run to the defendant's detriment. Indeed, by securing the Government's assurances that it would not seek a mandatory sentence of 25 years, Johnson's plea agreement netted him a better outcome than what he would have gotten in the absence of such an agreement. The Court cannot find that counsel's representation was outside the range of competence demanded by attorneys in criminal cases.

   3. *Drug Weight and Composition*

Johnson's final argument is that counsel was deficient by failing to object to the drug weight calculation and composition used in the PSR. Johnson asserts that the only evidence used

to confirm the presence of methamphetamine was a "field test" conducted at the scene of the accident. He appears to base this belief on ¶12 of the PSR:

> The crystal/rock substance found on Johnson was field tested and it was found to contain methamphetamine of an approximate weight of one pound/approximately 453 grams. The government expects that, at trial, a drug trafficking expert would testify that 453 grams of meth is far more than a drug user would possess for personal use and is instead indicative of intent to distribute. Investigators are aware that the typical purity of methamphetamine in this area is greater than 85% pure, especially meth that appears, as this meth did, in large crystal shards. All events described occurred in the Northern District of Indiana

(PSR, ¶12). Johnson believes that if the substance had been properly tested and the purity determined based on a "mixture or substance" containing methamphetamine rather than on "pure" methamphetamine, his mandatory minimum on the drug offense would have been 5 years instead of 10.

In response, the Government notes that the field test was only the starting point of the testing undertaken by the Government. The Government submits the lab report from the DEA laboratory that tested the methamphetamine in this case. (ECF No. 92-1). That lab report shows methamphetamine with a net weight of 439.3 g with 98% (+/- 6%) purity. The report concludes that the amount of pure substance is 430.5g (+/- 26.5 g). This is wholly consistent with the generalized information in the PSR. Further, given that Johnson's 10-year statutory mandatory minimum was triggered by just 50 grams of pure substance and Johnson possessed 8 times that amount in the DEA lab report, he is hard-pressed to argue that a reasonable basis existed for counsel to object to the drug weight or composition. Indeed, in the face of that report and without any evidence or belief that the DEA lab report is incorrect, counsel's argument that the lab report overstated the amount and purity would have been frivolous. *See Little v. United States*, 2024 WL 3650108, at *2-3 (S.D. Ill. August 5, 2024) (holding that counsel's failure to challenge the lab

techniques used to determine the purity level of methamphetamine as "false science" not ineffective assistance); *Lickers v. United States*, 98 F.4th 847, 857 (7th Cir. 2024) ("Just because an argument has some remote chance of prevailing does not mean that a lawyer is constitutionally deficient for failing to bring it."). Counsel's decision not to challenge the drug quantity or composition fell well within the range of reasonable professional assistance afforded defendants and she was not ineffective for failing to object to the drug quantity or composition.

### c. Prejudice Prong

As set out above, Johnson has not identified any performance deficiencies in counsel's representation. For this reason, the Court need not address whether Johnson suffered prejudice as a result of counsel's non-deficient performance. *Crowell v. Sevier*, 77 F.4th 539, 544 (7th Cir. 2023) (where a showing has not been made on one ineffective assistance prong, a court need not address the other).

## DENIAL OF CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings in United States District Courts instructs the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. 2253(c)(2) provides that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004)); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Johnson has not made a substantial showing of the denial of a constitutional right.

Having thoroughly reviewed the record before the Court, the undersigned concludes that reasonable jurists would not find the disposition of his ineffective assistance claim debatable or wrong. Accordingly, this Court DENIES issuance of a certificate of appealability.

## **CONCLUSION**

For the reasons discussed, the Court DENIES Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255, DENIES his Amended Motion, (ECF Nos. 83 and 95) and DECLINES to issue a certificate of appealability.

SO ORDERED on September 12, 2024.

*s/ Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT